IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AARON B.,[1]                                        3:19-cv-01700-BR

              Plaintiff,                     OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.


**BRUCE W. BREWER**
P.O. Box 421
West Linn, OR 97068
(503) 621-6633

              Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

          [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1  - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LARS J. NELSON**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S221A
Seattle, WA 98104-7075
(206) 615-2531

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Aaron B. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

      For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

      Plaintiff filed his applications for DIB and SSI on December 30, 2016.  Tr. 186, 197.[2]  Plaintiff alleged a disability onset date of August 26, 2015.  His applications were denied initially and on reconsideration.  An Administrative Law

---

      [2] Citations to the official transcript of record filed by the Commissioner on April 21, 2020, are referred to as "Tr."

2  - OPINION AND ORDER

Judge (ALJ) held a hearing on September 10, 2018, at which Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney at the hearing. Tr. 28-53.

On November 19, 2018, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 13-22. Pursuant to 20 C.F.R. § 404.984(d) that decision became the final decision of the Commissioner on August 19, 2019, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on February 12, 1979. Tr. 186. Plaintiff was 39 years old at the time of the hearing. Plaintiff graduated from high school and has two years of college. Tr. 355. Plaintiff has past relevant work experience as a server and telemarketer. Tr. 20.

Plaintiff alleges disability due to post-traumatic stress disorder (PTSD), "social anxiety," depression, hypertension, and "arthritis of spine at L5-S1." Tr. 57.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 18-19.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## <u>DISABILITY ANALYSIS</u>

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R.

5 - OPINION AND ORDER

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform

work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since his August 26, 2015, alleged
onset date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe
impairments of degenerative disc disease, radiculopathy, PTSD,
anxiety, and depression.  Tr. 15.  The ALJ found Plaintiff's
hypertension is not a severe impairment.  Tr. 16.

7  - OPINION AND ORDER

At Step Three the ALJ concluded Plaintiff's medically determinable impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 16.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can sit for 6 hours in an 8 hour day, stand or walk for 6 hours in an 8 hour day, and push and pull as much as he can carry. [Plaintiff] can frequently climb ramps or stairs, occasionally climb ladders, rope, or scaffolds and frequently stoop, kneel, crouch, and crawl.  In addition, [Plaintiff] is limited to simple, routine, repetitive work, limited to simple work related decisions, and can have only occasional interaction with the public.

Tr. 17.

At Step Four the ALJ found Plaintiff is unable to perform his past work.  Tr. 20.

At Step Five the ALJ found Plaintiff can perform other work that exists in the national economy.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 21.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the lay-witness statement of Erin Walli, Plaintiff's friend; (3) partially rejected the opinion of Tara O'Connor, P.M.H.N.P., treating nurse practitioner; and (4) failed to address the

8  - OPINION AND ORDER

opinion of Rachael Postman, F.N.P., treating nurse practitioner.

**I.   The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also*

9  - OPINION AND ORDER

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (same).  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that he left his last job as a server because he "wasn't able to keep up.  The anxiety was too much."  Tr. 44.  Specifically, "at the end [Plaintiff] was able to do maybe one table and with the shaking [he] wasn't able to even bring plates to the table."  Tr. 44.  In addition, he "ended up having to leave because [his] partner wanted to go back up to Oregon."  Tr. 44.  Plaintiff stated on a typical day he wakes up, takes his medications, tries to "do a little bit of light housework," and "takes [his] dog out."  Tr. 34.  Plaintiff, however, cannot "hover over a sink for very long[,] prepare extensive meals, do laundry[,] . . . sweep[,] mop[,] or vacuum."  Tr. 35-36.  Plaintiff does not have any hobbies, and he has trouble paying attention to the television "so . . . during a typical day [Plaintiff] just kind of sit[s] there and . . . do[es] nothing."  Tr. 35.  Plaintiff stated he also goes "to the supermarket once a day so [he] can get exactly what [he] need[s] for the day."  Tr. 35.  Plaintiff, however, has difficulty "being around a lot of people. . . .  Normally [he] ha[s] to write down

exactly what [he is] getting [at the grocery store], get in and
get out as soon as possible." Tr. 36.  Plaintiff also has
difficulty lifting things that weigh more than "five to 10
pounds" off the shelves.  Tr. 36.  In addition, Plaintiff does
not get along well with others when he is shopping.  Tr. 46.
Plaintiff testified he does not drive because of "[t]he shaking"
and paranoia.  Tr. 33.  Plaintiff stated he can sit for "[a]bout
an hour and a half [or] two hours" before pain in his lower back
bothers him and he has "to get up and walk around."  Tr. 34.
Plaintiff testified he used marijuana on a daily basis until
March 2018.  Plaintiff stated he has "noticed . . . improvements
in [his] mental health since cutting back on . . . alcohol and
. . . marijuana."  Tr. 40.  Specifically, Plaintiff is "able to
notice things a lot easier, able to look through the fog a little
easier when . . . [his] doctors are helping [him] figure things
out."  Tr. 40.  Plaintiff is also "starting to actually walk
[his] dog all the way around the block" instead of being too
fearful to leave the house.  Tr. 40.

    The ALJ asked Plaintiff whether he believed he could do a
hypothetical job for "eight hours a day, five days a week" in
which he

> would be putting shoes into shoeboxes.  So, you'd
> be in front of a table.  On that table would be a
> stack of shoes, a stack of boxes, and your task
> would be to put the shoes inside the boxes.  You
> could sit and do that job, stand and do that job,
> move around however you'd like as long as you're

> still in front of that table doing that particular
> work.  You'd have no interaction with the public,
> no interaction with coworkers unless you wanted
> to.  It would just be you, the shoes, and the box
> throughout a normal day.  You'd have a morning
> break of 15 minutes, a lunch break of 30 minutes,
> and an afternoon break of 15 minutes.

Tr. 41-42.  Plaintiff responded he "probably [could] not" do such

a job because he would "have to have many visits to the restroom

throughout the day" due to "stomach problems - diarrhea."

Tr. 42.  Plaintiff noted his doctors prescribed Imodium for his

diarrhea, and it "kind of helps but it's still very

unpredictable."  Tr. 43.  The ALJ asked Plaintiff whether there

was "anything else you feel would prevent you from doing that

kind of job?"  Tr. 43.  Plaintiff responded:  "Paying attention

is really hard."  Tr. 43.

The ALJ found Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged

symptoms," but Plaintiff's "statements concerning the intensity,

persistence and limiting effects of [his] symptoms are not

entirely consistent with the medical evidence and other evidence

in the record."  Tr. 18.  Specifically, the ALJ noted although

Plaintiff "has a history of back and upper extremity pain . . .

from a motor vehicle accident 26 years ago," diagnostic imaging

including x-rays and MRIs of Plaintiff's spine reflected only

mild findings.  For example, a December 30, 2016, MRI of

Plaintiff's lumbar spine reflected "mild bilateral facet

hypertrophy" at L1-2 and L2-3; bilateral facet degeneration with minimal disc bulge at L4-5; and bilateral facet degeneration and "mild diffuse disc bulge with associated posterior annular fissure [and] mild bilateral lateral recess stenosis with mild bilateral neuroforaminal stenosis" at L5-S1.  Tr. 447.  The radiologist concluded Plaintiff did not have any "significant change in multilevel degenerative changes of the lumbar spine" since Plaintiff's previous lumbar MRI in September 2012.  A December 30, 2016, x-ray of Plaintiff's lumbar and thoracic spine reflected "[n]o canal stenoses, no high-grade foraminal stenoses. Mild degenerative change at L5-S1, with mild left foraminal narrowing."  Tr. 451.  The radiologist concluded Plaintiff had "[m]ild L5-S1 degenerative disc disease and mild facet hypertrophy of the lower lumbar spine."  Tr. 452.  A March 28, 2017, x-ray of Plaintiff's thoracic spine revealed "no fracture, vertebral body height loss or osseous destruction.  There is minimal lower thoracic end plate spurring.  Alignment is otherwise normal.  The soft tissues are normal."  Tr. 509.  The radiologist concluded Plaintiff had "[m]ild degenerative spurring of the lower thoracic spine."  *Id.*

The ALJ also noted Plaintiff has "mental health symptoms due to [PTSD], anxiety, and depression."  Tr. 18.  The ALJ, however, noted Plaintiff did not take psychotropic medications "at times for significant periods despite ongoing mental health

complaints," and Plaintiff "had excellent improvement towards objectives and goals" when he regularly took his medications and engaged in mental-health treatment.  Tr. 18.  For example, in early 2016 Plaintiff was prescribed and began taking medication for depression and anxiety.  Throughout 2016 Plaintiff's treatment notes consistently reflect Plaintiff was responding to treatment and had a decrease in his nightmares, anxiety, and depression.  *See, e.g.,* Tr. 355, 359, 364, 370, 371, 372, 385, 386.  In 2017 Plaintiff began to attend therapy regularly and continued to experience a decrease in his depression, anxiety, and PTSD symptoms.  *See, e.g.,* Tr. 340, 342, 399, 586, 637, 642, 674, 723.  In 2018 Plaintiff's treating nurse practitioner advised Allison Howells, M.A., Q.M.H.P., treating counselor, that testing had established Plaintiff's tremors and memory issues were due to medication rather than anxiety.  Tr. 603.  In June 2018 Plaintiff and Q.M.H.P. Howells "talked about the end of therapy.  [They] talked about how he feels like there is not a lot more progress he can make, instead he just needs someone to talk to."  Tr. 602.  Plaintiff and Q.M.H.P. Howells discussed "either end[ing] therapy when [Plaintiff] gets into William Temple House or [Plaintiff would] come back for a couple more months and then end [therapy] completely."  Tr. 602.

In addition, the record reflects in May 2016 Plaintiff's diarrhea was "better now that prazosin dose is stable, still

14 - OPINION AND ORDER

taking 12mg of that, diarrhea is now intermittent." Tr. 376.  In September 2016 Plaintiff reported his chronic diarrhea was relatively controlled by taking Imodium twice a day.  Tr. 368. The record does not reflect Plaintiff reported uncontrolled diarrhea after September 2016.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## II.  The ALJ did not err when he partially rejected the lay-witness statements of Erin Walli, Plaintiff's friend.

Plaintiff alleges the ALJ erred when he partially rejected the lay-witness statements of Erin Walli, Plaintiff's friend.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.

2006).

On March 5, 2017, Walli completed a Third-Party Function Report in which she stated Plaintiff has "injuries that limit him from doing some tasks," and he has social anxiety that limits him as well. Tr. 259. Walli stated Plaintiff "spends a lot of time resting or doing low-impact activities like watching tv, sitting outside, or going on a short walk." Tr. 260. She noted Plaintiff does "light cleaning without excessive bending or reaching or lifting"; "occasionally shops for food"; "watches a lot of TV"; and goes out to eat with her "at least weekly" but only when she asks, and she "often need[s] to go meet him where he is and escort him to the location." Tr. 263. Walli stated Plaintiff's "physical injuries limit his lifting, reaching, and mobility: can only lift light things, approx. 5 lbs, has to be careful/slow about bending, squatting, kneeling. Sitting can become painful as well." Tr. 264. In addition, "anxiety and mental issues sometimes affect [Plaintiff's] memory retention." Tr. 264. Walli noted Plaintiff "has a good amount of anxiety when it comes to other people and is scared of their intentions or actions." Tr. 265. He gets along with authority figures, however, "well enough for an appropriate exchange." Tr. 265.

The ALJ gave "limited weight" to Walli's statements on the grounds that they are not supported by the medical evidence in the record and are based in part on Plaintiff's self-reported

symptoms, which the Court has already concluded the ALJ partially rejected properly.  Germane reasons for discrediting lay-witness testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012); *Molina*, 674 F.3d at 1117 (When a lay witness does not describe limitations beyond those described by Plaintiff and the ALJ properly rejected the Plaintiff's subjective symptom testimony, any error in rejecting the lay-witness testimony would be harmless.).

The Court concludes on this record that the ALJ did not err when he partially rejected Walli's Third-Party Function Report because the ALJ provided reasons germane to Walli supported by substantial evidence in the record.

**III. The ALJ did not err when he partially rejected the opinion of N.P. O'Connor.**

Plaintiff asserts the ALJ erred when he partially rejected the opinion of N.P. O'Connor.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, nurse

practitioners.  SSR 06-03p, at *2.  Factors the ALJ should
consider when determining the weight to give an opinion from
those "important" sources include the length of time the source
has known the claimant and the number of times and frequency that
the source has seen the claimant, the consistency of the source's
opinion with other evidence in the record, the relevance of the
source's opinion, the quality of the source's explanation of his
opinion, and the source's training and expertise.  SSR 06-03p, at
*4.  On the basis of the particular facts and the above factors,
the ALJ may assign a not-acceptable medical source either greater
or lesser weight than that of an acceptable medical source.  SSR
06-03p, at *5-6.  The ALJ, however, must explain the weight
assigned to such sources to the extent that a claimant or
subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,
at *6.

On February 10, 2018, N.P. O'Connor completed a Mental
Residual Functional Capacity Questionnaire in which she noted she
had seen Plaintiff 13 times and found Plaintiff suffers from
PTSD.  N.P. O'Connor stated Plaintiff was markedly limited in all
but one of the 20 categories of the Questionnaire including such
things as the ability to "carry out very short and simple
instructions," to "make simple work-related decisions," and to
"accept instructions and respond appropriately to criticism from
supervisors."  Tr. 331-32.

The ALJ gave "little weight" to N.P. O'Connor's opinion on the ground that N.P. O'Connor's opinion was inconsistent with the medical evidence.  For example, as noted, the record reflects Plaintiff's symptoms of PTSD, anxiety, and depression improved when he regularly took medication and engaged in mental-health counseling.  In fact, in June 2018 Plaintiff and his counselor agreed he was ready to discontinue counseling because he had achieved his goals.

On this record the Court concludes the ALJ did not err when he partially rejected N.P. O'Connor's opinion because the ALJ provided specific and legitimate reasons for doing so based on substantial evidence in the record.

**IV.  The ALJ erred when he failed to address the opinion of N.P. Postman.**

Plaintiff asserts the ALJ erred when he failed to address N.P. Postman's opinion.

On June 18, 2018, N.P. Postman completed a Physical Residual Functional Capacity (PRFC) form in which she stated Plaintiff could sit for one hour in an eight-hour workday; could stand for one hour in an eight-hour workday; could walk for one hour in an eight-hour workday; could occasionally[3] carry up to ten pounds and climb ramps or stairs; and could "less than occasionally"

---

[3] The PRFC form defined "occasionally" as "occurring very little up to 1/3 of an 8 hour workday (cumulative, not continuous)."  Tr. 763.

reach in all directions, handle, and finger.  Tr. 763-64.

N.P. Postman also noted Plaintiff is limited in his ability to

push and/or to pull with his upper and lower extremities.

N.P. Postman stated Plaintiff would miss six or more days of work

per month due to his mental and physical symptoms.  Tr. 767.

Social Security Ruling 06-03-P provides:

> Since there is a requirement to consider all
> relevant evidence in an individual's case record,
> the case record should reflect the consideration
> of opinions from medical sources who are not
> "acceptable medical sources" and from "non-medical
> sources" who have seen the claimant in their
> professional capacity.  Although there is a
> distinction between what an adjudicator must
> consider and what the adjudicator must explain in
> the disability determination or decision, the
> adjudicator generally should explain the weight
> given to opinions from these "other sources," or
> otherwise ensure that the discussion of the
> evidence in the determination or decision allows a
> claimant or subsequent reviewer to follow the
> adjudicator's reasoning, when such opinions may
> have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939, at *6.  Pursuant to SSR 06-03P

"there is no requirement . . . that the ALJ explain 'the weight'

given the [not acceptable source's] opinion[] as long as he

provides a discussion of the [not acceptable source's] evidence

that clearly discloses his reasoning.

As noted, the ALJ did not address N.P. Postman's opinion in

his decision.  In addition, it is unclear whether the ALJ

considered N.P. Postman's opinion because the ALJ failed to

mention the opinion or to discuss the limitations noted by

N.P. Postman.  The Court finds the ALJ's error is not harmless because N.P. Postman stated, among other things, that Plaintiff would miss six or more days of work per month due to his impairments.  The VE testified at the hearing that an individual who would be "off [work] once a week" would not be able to perform any work.  Tr. 51.  Thus, the ALJ would have to find Plaintiff is disabled if the ALJ fully credited N.P. Postman's opinion.

On this record, therefore, the Court concludes the ALJ erred when he failed to address N.P. Postman's opinion.


**REMAND**

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award

21 - OPINION AND ORDER

of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here the Court concludes further proceedings are necessary because it is unclear on this record whether the ALJ would adopt N.P. Postman's opinion in full or reject portions of it based on the medical record if the ALJ considered that opinion.  It is also unclear on this record what effect consideration of N.P. Postman's opinion would have on the ALJ's disability determination.  The Court, therefore, concludes a remand for further proceedings consistent with this Opinion and Order is required to clarify whether the ALJ considered N.P. Postman's opinion and the effect that would have had on the ALJ's determination of Plaintiff's disability.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of October, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge

23 - OPINION AND ORDER